GEORGE C. GENET *v.* JOHN BINSSE, EXECUTOR, *et al.*

To lay a foundation for costs in an action against executors and administrators, the claim presented for payment and offered to be referred, before action brought, must be *substantially* the claim upon which the plaintiff subsequently recovers.

It is not necessary that the claim presented should be of the precise amount recovered in the action, or that it should be in favor of precisely the same party, so long as the executor is not misled and is apprised of the general nature of the claim. Nor is it necessary that the claim should have been presented to each of two executors.

SPECIAL TERM, JANUARY, 1870.

MOTION for costs in an action against executors. The facts fully appear in the opinion of the court.

*G. C. Genet,* for motion.

*Scudder & Carter,* opposed.

DALY, F. J.—This is an application to allow the costs and disbursements to be taxed and inserted in the judgment. It is resisted upon the ground that the claim upon which the plaintiff has recovered is not the claim which was presented to the executors, which they disputed, and which Scudder and Carter, the plaintiff's attorneys, offered to refer, and that, therefore, the plaintiff is not entitled to costs.

The plaintiff recovered $1,250 for the breach of a special contract on the part of the executors, entered into in writing between the plaintiff and the testator, whereby the testator agreed that the plaintiff should appear on his, the testator's, behalf before the commissioners of estimates and assessments and the Supreme Court in the matter of the widening of Reade street, for the purpose of increasing the amount of the award made by the commissioners in favor of the testator, and by

which special contract he agreed that the plaintiff should have one-half of the increase over and above the award made, he, the plaintiff, taking the trouble and expense at his own risk.

After this contract was entered into, and during the lifetime of the testator, the plaintiff undertook to obtain an increase of the award, and appeared upon the testator's behalf before the commissioners of estimates and assessments and before the Supreme Court, rendering various services, which were continued after the testator's death and after the defendants had entered upon their duties as executors, the counsel of the executors, the late Mr. Edwards, appearing as their representative, with the plaintiff, upon the hearing of the matter before the commissioners.

I conclude, from the plaintiff's letter of October 30, 1858, and the defendant Binsse's reply to it, that the defendants were unwilling to recognize the plaintiff's right to appear any further on their behalf or on that of the estate, under the contract which he had made with the testator, upon the technical grounds that new commissioners had been appointed, and that, in the language of the defendant Binsse's letter, the plaintiff's contract with the testator was based upon the sole claim of obtaining an increased award from the old set of commissioners, and the intervening circumstances (the appointment of new ones), having destroyed that chance, he had no right under his contract to appear any further in the matter, in behalf of the estate, the sole management of which was to be and, I presume, was entrusted thereafter to Mr. Edwards, a distinction which the referee did not appreciate, as he awarded $1,250 damages to the plaintiff for the breach of the contract of the testator on the part of the executors.

The plaintiff's letter of October 30, 1858, to the defendant, Binsse, was an offer to surrender the contract signed by the testator, and abandon all right to contingent compensation under it for $1,000, a less sum than he has recovered, and that for his services after the new commission was appointed he would not name any sum, but submit it to the arbitration of Mr. O'Conor or Mr. Cutting, two eminent lawyers, all of which the defendant, Binsse, on behalf of himself and his co-executors, declined,

refusing for the reasons above set forth to recognize that the plaintiff had any claim whatever against the estate upon the testator's contract or any right whatever to appear on its behalf after the appointment of the new commissioners.

Matters appear to have remained in this state until the 12th of October, 1859, when Scudder and Carter addressed the defendant, Binsse, a letter informing him that they were employed by the plaintiff and E. G. Genet as their attorneys to present their claim against the La Farge estate to the executors, and that they enclosed therewith a statement of it; that from what *had occurred* in respect to *the claim,* they supposed it would not be recognized by the executors, and that, to test its validity, they offered, on behalf of their clients, in case the executors should doubt the justice of *the claim,* to refer the matter in controversy to three disinterested persons to be approved by the Surrogate. On the 18th of October following, six days afterwards, Scudder and Carter received a note from Mr. Edwards to the effect that he was instructed by the executors to say that they did not recognize G. C. & E. G. Genet's claim as sent in by their attorneys, and that the executors preferred to have it tested by a jury. The offer to refer in the mode provided by the statute having been declined, the plaintiff commenced this suit on the 12th of November following.

In the letter of Scudder and Carter, a statement was enclosed in the form of a bill of particulars of the amount due from the executors, &c., to G. C. & E. G. Genet, in which the specific services rendered by them in the matter of the award were set out in the shape of items, with their estimate of the value of each specific service, amounting to the sum of $1,050, for their services before the old commissioners; $2,500 for their services before the new, and $250 for services in the matter of the Central Park, for moneys awarded to unknown owners, and amounting in the whole to the sum of $3,800, which statement and claim was verified by an affidavit of the plaintiff in the form prescribed by the statute.

It is conceded that the letters of the plaintiff of October 30, 1858, and of Scudder and Carter, of October 12, 1859, were presented within the time required by the statute, if they

amounted to a presentation of the demand or claims upon which the plaintiff recovered, within the meaning of the statute; nor is it questioned that the letter of Mr. Edwards, was, by the defendant's authority, and that it amounted to a rejection of the claim presented and of the offer to refer it. The only question raised upon this motion is whether it is substantially the same claim as the one upon which the plaintiff recovered.

In *Wallace* v. *Markham, Adm.*, &c. (1 Denio, 671), the plaintiff recovered $579.20 upon a *quantum meruit*, for labor and services performed for the intestate in his lifetime and the claim presented to the administrators, was a note or agreement given by the intestate to the plaintiff shortly before his death for $1,000, to be paid upon an uncertain contingency,— when his land in Michigan should be sold,—the plaintiff, when the note was given, being a minor, and which note she disaffirmed after she became of age, and brought her action to recover upon a *quantum meruit* for her services. It was held that this was not the claim upon which the plaintiff recovered— that to lay a foundation for costs in actions against administrators and executors, the claim presented for payment, and which is offered to be referred, must be *substantially* the claim upon which the plaintiff subsequently recovers, and upon the authority of this case, it is insisted that the claim presented by Scudder and Carter was not substantially the one upon which the plaintiff recovered.

The letter of the plaintiff to Binsse, of October 30, 1858, evidently refers to the claim, which was enclosed in the form of a statement in the letter of Scudder and Carter, and attested by the plaintiff's affidavit, and both letters, in my opinion, may be taken together in determining whether the claim presented, and the one recovered on, were substantially the same. If I am right in this conclusion, then the letter of the plaintiff fully apprised the defendant, Binsse, that the plaintiff insisted that he had a right to a contingent compensation under the contract for his services up to the time of the appointment of the new commission, as well as a claim for his services before the new commission, and the letter of Binsse, in reply, shows

that he so understood it, and that he denied the right of the plaintiff to any compensation from the estate for services rendered in the matter of the award, whether rendered in pursuance of the contract, or upon any implied recognition on the part of the executors of what he had done in behalf of the estate, before the new commissioners. It was a total repudiation, denial, and rejection of any claim on the part of the plaintiff against the estate, with a clear understanding on the part of the executors of the grounds upon which the claim was made, and an exposition of the reason why the executors did not admit it, but rejected it; followed by a distinct notification that the plaintiff's present and future services were not required by the executors, that he did not acknowledge having retained any member of the plaintiff's firm, and that if the supposed services of either of them (G. C. or E. G. Genet) should be required, it would be upon a special and explicit retainer, and that Mr. Edwards who had acted before the commissioners, would be able sufficiently to attend to the interest of the estate.

Eleven months after this letter of Binsse was written, the letter of Scudder and Carter was sent to the executor, enclosing the statement before referred to. This statement differs in some respects from the claim as recovered. 1. The obligation is set forth as an indebtedness to the plaintiff's firm, G. C. & E. G. Genet;—the attesting affidavit of the plaintiff being that it was justly due to the firm, whereas the contract sued upon was with the plaintiff only, and the action upon it was brought by him alone; 2. It was much greater in amount than the claim recovered; and 3. It contained a charge, $250, for services not rendered under the special contract.

In determining whether these points of difference in the claim presented are material or not, it will be necessary to look into the statute, and see exactly what it imposes upon the claimant, before he can hold either the estate or the executors answerable for costs, if he brings an action against them and recovers. 1. The demand must be presented within the time prescribed by the statute, which in this case was done. 2. If the executor requires it, satisfactory vouchers in support of the claim must be produced, and also the affidavit of the claimant

that it is justly due, that no payments have been made upon it, and that there are no offsets against it, to the knowledge of the claimant (2 Rev. Stat., 87, 134, 35, 36, 41). It does not appear that the executors, when the claim was presented by Scudder and Carter, required the claimant or claimants to produce any vouchers or to make any affidavit, in compliance with this provision, and where that is the case, the creditor is not required to produce the voucher, if there is one, or to verify the claim (*Ganseevort* v. *Nelson*, 6 Hill, 389 ; *Wilcox* v. *Smith*, 26 Barb., 334); for, as was suggested, in the first of these authorities, the executor may know all about it, and not desire any information, evidence, or verification; an observation which applies pertinently to this case, for Binsse, as has been already shown, knew all about the matter, and with a full understanding of it, had previously disputed, denied, and rejected any claim of any kind upon the estate, arising out of what the plaintiff or his firm may have done to obtain an increase of the award. The absence, therefore, of any reference in the statement to the contract, or of any offer to produce the voucher, or the fact that the indebtedness was alleged to be due to the firm, and the statement to that effect in the affidavit, are all immaterial, unless the executor was misled, and had reason to suppose that the claim was other and different from the one in respect to which he had previously corresponded with the plaintiff and repudiated. Whether there was any foundation or not for such a conclusion on his part will be considered hereafter.

Nor is it material that the amount was greater than the amount recovered. Damages were recovered for the breach of the contract, and what those damages were could be settled only by agreement between the parties, or by the result of a trial in an action. It was, therefore, very proper to set forth in this statement each specific service which had been rendered, with the estimated value of each, as it was giving the executor the items upon which the estimate of damages was founded ; and that the estimate was too high, being greater than was subsequently recovered, was, in a matter so uncertain, immaterial, if the executors were in all other respects fully apprised of the nature of the claim. The same remark may be applied

to the item of $250, which was for a service distinct and different from that rendered for obtaining an increase of the award upon the opening of Reade street; for this item of $250 was separately set forth. It was placed the last among the items, and in the specification of it was so distinguished and particularly described, as to show to the executors for what that charge was made, and, therefore, putting it in their power to admit it, if so disposed, and pay it, whilst they disputed the rest, as in *Barsalon's Case* (4 Abb. Pr. R., 137, 138).

All the other items, which were seven in number, related to services rendered either in the Supreme Court, or before the commissioners in the matter of increasing the award for the opening of Reade street, and the services rendered before the new board of commissioners, were distinguished from those before the old, and their value separately estimated. The question therefore recurs, was this substantially the same claim as the one upon which the plaintiff recovered? And before deciding that question, it may be as well to state that a presentation of the claim to one of the executors is sufficient, and if after a reasonable length of time has elapsed to enable him to confer with the others, no action is taken, no doubt of the justice of the claim expressed or given to the claimant, and no desire intimated to him to have it referred in the mode which the statute has provided, then the payment of it by the executors within the meaning of the statute is " unreasonably resisted or neglected," and the claimant may bring his action, and if he recovers, should be allowed to recover the costs which he has incurrred (*Knapp* v. *Curtis*, 6 Hill, 386 ; *Cole* v. *Jessup*, 1 Barb., 394).

In reviewing the sufficiency of the presentation of a demand to executors, in *Gansevoort* v. *Nelson* (6 Hill, 392), stress was laid upon the fact that the executors evidently knew everything in relation to the plaintiff's demand, and very properly ; for the obvious design of the statute was, that neither the estate, nor the executor, should be chargeable with costs, unless where, in view of their representative character, it was just to impose them. And it is, therefore, made incumbent upon the claimant, within six months after the representatives

of the deceased have published their notice requiring the presentation of claims against the estate, to present his claim, and in doing so, to disclose the nature and amount of it, with sufficient certainty to enable the executors to judge of the justice of it, and to determine whether he requires the production of vouchers, if there are any, or a verification of the justice of it, by the affidavit of the claimant, in the form prescribed by the statute, and whether he ought to dispute and resist it, as well as to enable him to determine whether he will have it referred, as the statute provides, or require the claimant to establish the validity of it by an action at law. "Where," says Bronson, J., (in *Gansevoort v. Nelson, supra*), "the executor already understands the whole matter, and does not desire that the evidence should be submitted to his examination, it cannot be necessary for the creditor to do more than to present his claim; and that may be done through an agent, by a written communication, or in any other way, that *deals fairly with the executor, and the interests which he represents.* If the presentation is made by letter, the executor is *bound to deal ingenuously with the creditor.* If he wishes to see the evidences of the debt, or to have the oath of the creditor to the justice of the claim, he should say so, and not leave the claimant to suppose that he has done everything that is wished, and afterwards object that there has not been a more formal presentation of the demand." The statute requires that it should be presented within the six months after the publication, which must be strictly complied with, to make the executor answerable for costs (*Bullock* v. *Bogardus,* 1 Denio, 276; *Bradley* v. *Burnell,* 3 *id.*, 262). But it has been held that the executors, rejecting the claim within the time of the publication, would waive the presentation within that time, for the formally presenting it after it had been deliberately and distinctly rejected, would be idle; and I cite these views, especially in the last of these cases, to show the liberal, just, and comprehensive spirit in which these provisions of the statute have been construed, in contradistinction to the very technical one relied upon in the answer made to this motion.

In my opinion, the defendant, Binsse, knew perfectly well

that all the items, except the last one in the statement sent to him by Scudder & Carter, related to the claim previously in controversy between him and the plaintiff, and that when he received the paper and the letter of the attorneys, he thoroughly understood the nature of the claim and upon what it was founded. His own letter, previously sent to the plaintiff, shows that he knew all about the contract in writing which the testator had made with the plaintiff, and was so thoroughly familiar with its provisions that he undertook to put his own construction upon the legal effect of it, and was so fully satisfied of the correctness of that construction that in this letter he apprised the plaintiff of his conclusion as executor that no valid claim could be made by the plaintiff against the estate, and closed this part of his letter in these words, "you are respectfully notified by me, as executor, that such claims are disallowed;" that is, as the letter expresses it, all claims from November, 1857, to March, 1858, the written contract with the testator having been made the 23d of December, 1857. As respects the item of $2,500 for conducting proceedings before the new commissioners, the same item contained in the statement presented by Scudder & Carter, he says, in this letter, that he never retained the plaintiff or his firm, on his own behalf or that of the estate; that he found the plaintiff acting in the matter, but did not interfere to prevent him, because, at that time, he supposed that the testator had employed him generally, but that circumstances now (at the time of the writing of this letter, November 25, 1858, and nearly a year before the claim was presented by the plaintiff's attorneys), impressed him, the executor, otherwise. That if he was in error and the plaintiff should be able to show that he or the estate was liable for any amount in the premises, such amount would be satisfied. This letter covers the whole period embraced by the seven items in the statement presented by the plaintiff, that is from November, 1857, to November 10, 1858, and I therefore say that it is apparent that he perfectly understood to what every thing in that statement referred, and that when the attorney of the executors in answer to Scudder & Carter's letter replied that the executors did not recognize Messrs. G. C. & E. G. Genet's

claim, and proposed to have it tried before a jury, the attorney meant to refer to the claim or claims growing out of the services which had been rendered to procure an increased award for the widening of Reade street, which the defendant, Binsse, upon due deliberation, had previously repudiated, and the $250 in the matter of the Central Park and to nothing else. If the executors or their attorney had supposed that it was a different claim, from the fact that it was made out in the name of the firm instead of that of the plaintiff, there would have been some indication on their part of that impression, and if they meant to put their refusal to recognize the claim upon that ground they should have stated it, for to quote again from Judge Bronson in *Gansevoort* v. *Nelson*, *supra*, "the executor is bound to deal ingenuously with the creditor." Though the contract was made by the plaintiff in his own name, he probably meant that the firm, composed of himself and E. G. Genet, should have the benefit of it, and the firm may, and very probably did, unite in performing the service; in addition to which, the charge of $250 may have been upon an assumed retainer of the firm. This may have been the reason why the claim was made out in. the firm's name, and the interest which the plaintiff meant the firm should have in it may explain why he verified it in the manner in which he did. However this may be, it is sufficient to say in the language of Judge Bronson that the executor should not have the claimant to suppose that he has done every thing required, and " afterwards object that there has not been a more formal presentation," which, I think, the attorney in this case did when he wrote that the executors preferred to have the claim tried before a jury, for had the rejection been put upon the ground stated, the error could have been rectified at once, and the claim re-presented formally, in the plaintiff's name alone.

It has been held in many cases, that if a considerable part of the claim presented has not been recovered, the claim has not beem unreasonably resisted by the executors, a consideration which does not arise in this case, as the executors refused to pass upon the claim when formally presented, and

put the plaintiff to his action by advising his attorney that they preferred to have it tried by a jury.

My conclusions are : That the claim recovered was rejected by the executors before Scudder & Carter made a formal presentation of it in their letter, and that upon the authority of the cases cited, the executors had, in effect, what the statute meant to secure to them. That the claim recovered was substantially embraced in the letter of Scudder & Carter. That neither the executors, nor their attorney were misled by the form in which it was presented, having previously understood all about it. That they made no discrimination or objection, upon the ground that it was in the form of an indebtedness to the firm and not to the plaintiff. That if their objection to it was upon that ground, or they objected only to the item of $250, fair dealing to the creditor required that they should have said so ; that the defect, in the one case, might have been rectified by correcting the mistake, and, in the latter, that he might know that all they objected to was the $250. That what they meant to reject, and did reject, was the very claim which was recovered. That they had no intention that that claim should be referred, in the form prescribed by the statute ; but meant that the validity of it should be tested by an action. And that the technical objection now raised was an after-thought, to relieve them from costs, after they had contested the claim, and their liability had been established by a recovery.

The motion for costs is therefore granted.